UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **BRYAN MCINTOSH,** | ) | **CASE NO. 1:16CV1680** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **GREATER CLEVELAND REGIONAL** | ) | **OPINION AND ORDER** |
| **TRANSIT AUTHORITY,** | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant Greater Cleveland Regional Transit Authority's ("RTA") Motion to Dismiss Plaintiff's Complaint, in Part. (ECF # 8). For the following reasons, the Court grants Defendant's Motion.

According to Plaintiff's Complaint, Plaintiff Bryan McIntosh ("McIntosh") was hired by RTA as a Quality Assurance Associate in August of 2014. McIntosh is an African-American male and a Muslim. In March of 2015, McIntosh was on a business trip with his direct supervisor, Frank Campbell when Campbell allegedly made remarks in McIntosh's presence disparaging Muslims. According to McIntosh, Campbell stated that the "Quran is going to replace the Bible" and that "Muslims are taking over the world and they should all

just be nuked and wiped out." In April of 2015, McIntosh filed a Complaint with the EEOC alleging that Campbell harassed and discriminated against McIntosh based on McIntosh's religion. McIntosh subsequently amended his EEOC Complaint to add a claim of race discrimination. Upon being notified of McIntosh's EEOC Complaint, RTA suspended McIntosh based on an unsubstantiated charge and set a pre-termination hearing. McIntosh had the charge dismissed, returned to work and subsequently filed a retaliation claim with the EEOC against RTA. RTA placed McIntosh on decision-making leave which McIntosh contends was the equivalent of a final written warning. McIntosh alleges he had no prior disciplinary actions that would justify such disciplinary action.

Thereafter, Mcintosh requested a transfer but was denied. As part of his job duties, McIntosh was scheduled to go to California to inspect buses that RTA intended to purchase. After denying his transfer, McIntosh contends RTA further retaliated against him by cancelling his California trips, sending three other Quality Assurance representatives to California and placing McIntosh on lower valued work. McIntosh contends a Caucasian employee refused to do a specs review job but was not disciplined. Instead, RTA made McIntosh do the job the Caucasian employee refused to do. In September 2015, after another suspension, McIntosh's employment with RTA was terminated.

**RTA's Motion**

According to RTA, McIntosh's Complaint fails to state a claim for race discrimination under both federal and Ohio law. McIntosh's Complaint alleges no facts that would make his race discrimination claims plausible. McIntosh does not claim a hostile work environment due to his race. Instead, he alleges only one single incident wherein a Caucasian employee

was not disciplined for refusing to do a spec review while McIntosh was required to do it.  The Complaint does not allege any discipline arising out of this incident and McIntosh does not allege his termination was the result of this incident.  Furthermore, RTA contends that having to perform a single, additional routine task of his job duties does not constitute an adverse employment action because it did not affect his salary, benefits or work hours.  Because the standard for race discrimination is the same under Title VII and Ohio law, RTA contends McIntosh's failure to state a claim under one theory is fatal to both.

RTA also moves to dismiss McIntosh's claim for Intentional Infliction of Emotional Distress ("IIED") because in the absence of something more, allegations of employment discrimination alone cannot support a claim for IIED.  In the absence RTA's outrageous conduct, McIntosh fails to allege sufficient facts to make his IIED claim plausible.

Lastly, RTA moves to dismiss McIntosh's claim for punitive damages under Title VII or O.R.C.  4112  because the statutes exclude punitive damages against political subdivisions.  Furthermore, RTA contends McIntosh cannot pursue punitive damages against RTA under common law because a statute must specifically authorize punitive damages against a political subdivision and common law does not.  Because punitive damages are not permitted against RTA, neither can McIntosh pursue attorney fees.

**McIntosh Opposition**

McIntosh opposes RTA's Motion, contending that his Complaint satisfies the notice pleading requirements under the Federal Rules of Civil Procedure.  McIntosh alleges each of the elements of a race discrimination claim under Title VII and alleges the same conduct that supports his religious discrimination claim supports his race discrimination claim.  McIntosh

relies heavily on the Supreme Court decision in *Swierkiewicz v. Sorema, N.A.* 534 U.S. 506 (2002), wherein the Court held that "employment discrimination complaint need not include such facts and instead must contain only a short and plain statement of the claim showing that the pleader is entitled to relief."

McIntosh further alleges his allegations support an IIED claim.  The insults to his religion, the retaliations and termination all support a claim of outrageous conduct by his employer.

McIntosh concedes he cannot proceed with his claim for punitive damages under federal and Ohio law and cannot recover his attorney fees on his state law claims.

McIntosh asks alternatively that the Court allow him to amend his Complaint should the Court find any of his claims fails to state a claim upon which relief may be granted.

## LAW AND ANALYSIS

**Standard of Review**

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  The court need not, however, accept conclusions of law as true:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in [*Bell Atlantic v.*] *Twombly*, 550 U.S. 544, 127 S. Ct. 1955 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-Defendant-unlawfully-harmed-me accusation.  *Id.* at 555.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.

4

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a Defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a Defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

According to the Sixth Circuit, the standard described in *Twombly* and *Iqbal* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir. 2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir. 2007)). That is, "*Iqbal* interpreted *Twombly* to require more concrete allegations only in those instances in which the complaint, on its face, does not otherwise set forth a plausible claim for relief." *Weisbarth*, 499 F.3d at 542. A complaint should be dismissed when it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Analysis**

McIntosh concedes that he cannot maintain his punitive damage claims and his state law claim for attorney fees, therefore, the Court grants RTA's Motion to Dismiss on these prayers for relief as they are unopposed and waived.

The Court further grants RTA's Motion to Dismiss McIntosh's race discrimination claims under federal and Ohio law as McIntosh has failed to plead sufficient facts making his race discrimination claims plausible. McIntosh fails to allege any facts of direct race

5

discrimination. His Complaint fails to allege any statements from his employer or supervisor indicating any racial animus. He fails to allege any facts demonstrating that RTA treated African-American employees differently than non-protected class employees.

A fair reading of the Complaint produces no factual allegation of RTA's discriminatory animus against African-American employees. The only factual, non-conclusory allegation in the Complaint that hints at a racial animus is McIntosh's allegation that "Dan Kirk, who is Caucasian, refused to do a specs review job and was not disciplined. Instead, RTA made McIntosh do the job that Kirk refused to do." However, as RTA points out, this allegation does not say that McIntosh was threatened with discipline if he similarly refused. In fact, it doesn't allege McIntosh refused to do the job. McIntosh's Opposition relies on the *Swierkiewicz v. Sorema, N.A.* Supreme Court decision but that opinion predates the *Twombly/Iqbal* decisions which require that claims include sufficient facts in order to state claims that are plausible on their face. Because McIntosh's race discrimination claims lack any facts rendering them plausible, dismissal is warranted.

Therefore, the Court grants RTA's Motion on McIntosh's claims of discrimination based on race under federal and Ohio law and dismisses these claims without prejudice.

**IIED**

Similarly, the Court finds McIntosh's IIED claim must be dismissed as well. Under Ohio law, a Plaintiff alleging an Intentional Infliction of Emotional Distress claim must prove the following elements:

> (1) the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff;
> (2) defendant's conduct was outrageous and extreme and beyond all possible

>bounds of decency and was such that it can be considered as utterly intolerable in a civilized community;
>(3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and
>(4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it.

*Talley v. Family Dollar Stores of Ohio, Inc.,* 542 F.3d 1099, 1110 (6th Cir.2008) (quoting *Ekunsumi v. Cincinnati Restoration, Inc.,* 120 Ohio App.3d 557, 698 N.E.2d 503, 506 (1997)).

To state a claim for IIED, McIntosh must show that RTA's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Long v. Ford Motor Co.,* 193 Fed.Appx. 497, 503 (6th Cir.2006) (quoting *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.,* 6 Ohio St.3d 369, 453 N.E.2d 666, 671 (1983) ( *overruled on other grounds* )). "[T]o say that Ohio courts narrowly define 'extreme and outrageous' conduct would be something of an understatement." *Baab v. AMR Servs. Corp.,* 811 F.Supp. 1246, 1269 (N.D.Ohio 1993). "Serious" emotional distress must be "severe and debilitating." *Kovac v. Superior Dairy, Inc.,* 930 F.Supp.2d 857, 870 (N.D. Ohio 2013) quoting *Paugh v. Hanks,* 6 Ohio St.3d 72 (1983)).

The Supreme Court of Ohio, in *Yeager,* 6 Ohio St.3d at 374-375, described what constitutes extreme and outrageous conduct: "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. * * *

7

Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" "As a matter of law, the conduct must be more than mere 'insults, indignities, threats, annoyances, petty aggressions, or other trivialities.' " *Mason, v. United States Fid. & Guar., Co.,* 69 Ohio App.3d 309, 317, (Ohio App. 1990) quoting *1 Restatement of the Law 2d, Torts* (1965) 73, Section 46, comment *d*.

Generally, termination of employment will not support an IIED claim even if the termination was for impermissible reasons. See *Godfredson v. Hess & Clark, Inc.,* 173 F.3d 365, 376 (6th Cir. 1999) ("But an employee's termination, even if based upon discrimination, does not rise to the level of "extreme and outrageous conduct" without proof of something more. If such were not true, then every discrimination claim would simultaneously become a cause of action for the intentional infliction of emotional distress."

In Ohio, threats of physical violence by a co-worker may arguably support a cause of action for IIED. *McNeil v. Case W. Res. Univ.* 105 Ohio App.3d 588, 594 (Ohio App. 8th Dist.,1995) (" ...the allegation that a co-worker physically threatened McNeil, arguably rises to the level of outrageous behavior sufficient for a finding of intentional infliction of emotional distress.") However, the Court finds no caselaw supporting an IIED claim based on where a supervisor's statements did not indicate a direct or present threat to the employee.

Furthermore, while this Court is obligated to construe all factual inferences in favor of Plaintiff, it must also be cognizant that "Ohio courts define extreme and outrageous conduct exceedingly narrow." *Wolfe v. Thermo Fisher Scientific, Inc.* 2009 WL 1255023, *2

(S.D.Ohio,2009).

In light of Ohio's narrow definition of extreme and outrageous conduct, the Court finds McIntosh's Complaint does not cite sufficient facts demonstrating a plausible claim for IIED.

While Campbell's purported statement that Muslims "should all just be nuked and wiped out" is repugnant, it does not meet the narrow definition as established by Ohio law.  This is true especially in light of what other courts have found to be conduct not rising to extreme and outrageous.  See *Wolfe,* *2 (S.D.Ohio,2009) ("Plaintiff alleged she was 'falsely imprisoned Plaintiff for four hours without food or water while they interrogated, intimidated, harassed and embarrassed her.' These allegations insufficient to state a claim for IIED under Ohio law.")  *Mullholand v. Harris Corp.*, 72 F.3d 130 (Table), 1995 WL 730466 *3 (6th Cir.1995), (a co-worker allegedly sexually harassed plaintiff, spread rumors about her, and "pushed" the plaintiff "against her locker and slammed its doors against her."  In affirming summary judgment for defendant the Sixth Circuit held, "the district court was correct in concluding that the 'outrageous and extreme' level that [the co-worker's] behavior would have to rise to here, in order to constitute an intentional infliction of emotional distress under Ohio law, has not been met.") *Id.* at * 17-18; *Norman v. City of Lorain, OH* 2006 WL 3337466, *2 (N.D. Ohio, Nov. 16, 2006) (Police officer attempted to place plaintiff in handcuffs and forced her right arm behind her back "really hard," which allegedly caused Plaintiff's arm to break. Officer's alleged actions insufficient to support IIED claim.); *Boggs v. Avon Prods., Inc.,* 56 Ohio App.3d 67, 73 (Ohio Ct.App.1990) (plaintiff's allegations that his supervisor  harassed and threatened him after plaintiff's accident, knowing that such conduct would cause him

anxiety, did not support IIED claim).

Campbell's statement does not rise even to these objectionable levels.  Campbell's statement does not indicate a present threat to cause harm to McIntosh.  While it is offensive and possibly malicious, malicious conduct does not support an IIED claim.  "Only the most extreme wrongs, which do gross violence to the norms of a civilized society, will rise to the level of outrageous conduct." *Brown v. Denny* (1991), 72 Ohio App.3d 417, 423, 594 N.E.2d 1008, 1012.

In *Wilson v. Columbus Board of Education,* 589 F.Supp.2d 952 (S.D. Ohio 2008) an assistant principal at a school attended by plaintiff, an eighth grade student, suspended plaintiff for conduct issues at school.  The assistant principal suspected plaintiff was being abused at home by her stepfather and also knew plaintiff would be at home during the suspension with her abuser, yet still imposed the suspension.  The assistant also read an Incident Report containing representations of plaintiff's misconduct to her abuser without regard for the potential consequences.  Plaintiff sued for IIED and the Court found the assistant principal's actions may have constituted poor judgment but did the alleged acts did not support an IIED claim.  Id. at 971.  Thus,  even conduct that places another in potential danger has been found not to support an IIED claim.

In light of Ohio's narrow definition of extreme and outrageous conduct, the Court finds McIntosh's Complaint does not cite sufficient facts demonstrating a plausible claim for IIED.  Therefore, the Court grants Defendant's Motion and dismisses Plaintiff's IIED claim without prejudice.

For the foregoing reasons, the Court grants RTA's Motion and dismisses without

prejudice Plaintiff's race discrimination claims (Counts I & II) under federal and Ohio law, Plaintiff's IIED claim (Count VII) and dismisses Plaintiff's request for punitive damages under federal and Ohio law and request for attorney fees under Ohio law.

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated:  October 12, 2016